IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

MASSACHUSETTS MUTUAL LIFE                                                             PLAINTIFF
INSURANCE COMPANY

V.                                                                           NO. 4:15-CV-166-DMB-JMV

PURVIS WILLIAM HILL, JR.                                                              DEFENDANT

*CONSOLIDATED WITH*

PURVIS WILLIAM HILL, JR.                                                              PLAINTIFF

V.                                                                           NO. 4:15-CV-184-DMB-JMV

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY; and JOHN
DOES 1–3                                                                             DEFENDANTS

# ORDER

These consolidated actions are before the Court on Massachusetts Mutual Life Insurance Company's motion to dismiss, Doc. #114; and motion to strike, Doc. #118.

# I
# Procedural History

On November 16, 2015, Massachusetts Mutual Life Insurance Company ("Mass Mutual") filed a complaint seeking a declaration that Purvis William Hill, Jr., is not due any benefits under a policy issued by Mass Mutual. Doc. #1. As a basis for jurisdiction, Mass Mutual alleged "[t]here is a justiciable controversy between Mass Mutual and … Hill … as to whether … Hill qualifies for any benefits under the … Policy." Doc. #1 at ¶ 21.[1] Exactly one month later, Mass Mutual removed from the Circuit Court of Coahoma County, Mississippi, an action brought against it by

---

[1] The Court will cite to the docket of No. 4:15-CV-166, the lead case in this consolidated cases.

Hill related to benefits under the Policy. These two actions were subsequently consolidated.

On August 5, 2016, Mass Mutual filed a "Suggestion of Death" stating that "Counsel for [Purvis William Hill, Jr.] has notified counsel for Mass Mutual that Dr. Hill passed away on July 26, 2016." Doc. #41. The notice was electronically mailed to all counsel of record, including Candace Lenette Williamson, Hill's daughter and former counsel.[2]

Approximately three months later, on November 2, 2016, Mass Mutual filed a "Motion for Order Regarding Substitution of Parties." Doc. #53. The motion sought (1) an order "stating that the ninety day time limit under [Federal] Rule 25 has not yet begun to run" or, in the alternative, "an Order extending the deadline to file a motion for substitution until such time as an estate can be created for Dr. Hill and an administrator can be appointed to represent his estate;" and (2) "an Order compelling action and/or information from [Candace] Williamson." *Id*. at ¶¶ 10–13.

On November 15, 2016, United States Magistrate Judge Jane M. Virden granted Mass Mutual's motion. Doc. #54. In her order, Judge Virden held that "[t]he 90-day period for filing a motion to substitute pursuant to Rule 25 has not yet begun to run" because "[t]he suggestion of death has not been served in accordance with Rule 4 on any nonparty." *Id*. at 1. The order also directed

> that counsel of record for the decedent file a declaration in this case within 14 days of this order stating: 1) whether an estate has been or will be opened and the identity of the estate's representative; 2) if no estate has been but will be opened, by what date this will occur; and 3) if no estate has been or will be opened, the identity of the decedent's legal successor(s) or representative(s). Counsel is warned that failure to file such declaration in accordance with this order may result in an appropriate sanction.

*Id*. at 2.

Williamson did not file a declaration within the time allowed and, on December 9, 2016,

---

[2] As this Court has previously explained, the death of a client terminates an attorney's authority to act on behalf of the client in the litigation. *See* Doc. #66 at 4.

Judge Virden convened a status conference "in reference to counsel['s] failure to comply with [the] prior order." Doc. #57. Following the conference, Judge Virden directed that Williamson "must file [a] declaration by 5:00 pm [on] 12/12/2016." *Id*.

On December 12, 2016, Williamson, as "Former Attorney for Dr. Purvis William Hill Jr., Deceased," filed a "Suggestion of Death of Party and Motion for Continuance." Doc. #56. In this filing, Williamson represented that Hill passed away on July 26, 2016, and that an estate for Hill was opened on or about October 17, 2016. *Id*. at 1. According to Williamson, the validity of Hill's last will and testament was challenged in the Chancery Court of Coahoma County, Mississippi. *Id*. at 2–3. Williamson asked that this matter "be stayed for a determination of who will pursue the claims of the Estate." *Id*. at 3.

On December 19, 2016, Mass Mutual filed a response in which it "consent[ed] to a limited continuance of the deadlines in this case … to the extent such a continuance is necessary … for the proper party to be substituted for Dr. Hill." Doc. #59. The same day, Mass Mutual filed a motion requesting an order "requiring Candace Williamson to provide regular reports about her efforts in the Chancery Court." Doc. #58. On December 29, 2016, Williamson responded in opposition to the motion for reports, Doc. #61; and also filed a second motion to continue, Doc. #62.

On January 5, 2017, this Court reset trial in this matter for June 5, 2017. Doc. #63. Approximately two weeks later, on January 18, 2017, Judge Virden denied Mass Mutual's motion for continued status reports, Doc. #65; and also noticed a telephonic conference for January 19, 2017.

On January 19, 2017, this Court issued an order staying the consolidated actions "pending a determination of who will pursue the claims of the Estate" or for ninety days, whichever came

first. Doc. #66. That day, Williamson did not appear for the scheduled telephonic conference before Judge Virden. Accordingly, Judge Virden issued an order directing Williamson to submit periodic status reports including "details of the status of the estate proceedings in Chancery Court" and "details of efforts made by Ms. Williamson to have a representative appointed for Dr. Hill's estate;" and to file the first report on January 24, 2017, and then "file an updated report every 21 days thereafter." Doc. #67. Williamson filed a status report on January 24, 2017, which included a status of the chancery proceedings but included no details of efforts to secure a representative. Doc. #68. This filing is the only status report of record.

On March 6, 2017, Mass Mutual filed a "Motion for Entry of an Order to Show Cause," seeking an order requiring Williamson to show cause why the case should not be dismissed. Doc. #69. Judge Virden noticed the show cause motion for a March 16, 2017, hearing. Doc. #70. Williamson did not appear for the noticed hearing. *See* Doc. #71; Doc. #72.

One day after Williamson failed to appear for the show cause hearing, Judge Virden issued an order awarding Mass Mutual attorney's fees and expenses associated with its show cause motion and the subsequent hearing. Doc. #72. Mass Mutual submitted its itemization of fees on March 24, 2017. Doc. #73. On April 4, 2017, Judge Virden approved a $3,000 fee award and directed Williamson to pay such amount by May 19, 2017. Doc. #74.

On April 21, 2017, Mass Mutual, citing Williamson's repeated misconduct, filed the instant motion to dismiss. Doc. #79. Approximately two weeks later, on May 1, 2017, Williamson filed a motion to join Hill's estate in this action. Doc. #82. On May 4, 2017, Judge Virden denied the motion for joinder "[f]or a myriad of reasons, including the fact that … Williamson only has authority to seek extensions of time in this matter." Doc. #83. In the same order, Judge Virden stayed the consolidated actions "until the earlier of 60 days from this date or appointment of an

administrator [of the Estate]." *Id*.

Williamson failed to pay the $3,000 fee by the ordered date and Mass Mutual, on June 1, 2017, filed a motion to compel the payment. Doc. #87. This motion was noticed for a hearing on June 22, 2017. Doc. #88. Williamson did not appear for the June 22, 2017, hearing.

On June 26, 2017, Judge Virden awarded Mass Mutual an additional $1,000 in fees and directed Williamson to pay the total $4,000 amount within seven days of the order. Doc. #90. The order provided that failure to do so would result in an additional sanction of one hundred dollars a day.

Three days later, on June 29, 2017, Judge Virden ordered Williamson to show cause why she should not be barred from entering a new appearance in the Northern District of Mississippi for a 120-day period. Doc. #91. Consistent with this order, Judge Virden scheduled a show cause hearing for July 11, 2017. Doc. #92. Williamson failed to appear for the July 11, 2017, hearing.

On July 12, 2017, Judge Virden issued a report and recommendation recommending that Williamson be barred from entering new appearances in this District for a 120-day period. Doc. #96. Williamson did not object to the report and recommendation. Accordingly, the undersigned, finding no plain error, adopted the report and recommendation on July 31, 2017. Doc. #98.

On October 11, 2017, Mass Mutual filed a motion representing that Williamson and Sammy Ellis had been appointed co-executors of Hill's estate. Doc. #100. The motion sought substitution of Williamson and Ellis as parties. *Id*. Judge Virden granted this motion on November 7, 2017. Doc. #101.

On November 7, 2017, Williamson and Sammy J. Ellis, co-executors of the Estate of Purvis William Hill, Jr., were substituted for Hill as plaintiffs in this action. Doc. #101 at 2. Approximately one month after the substitution, on December 5, 2017, Mass Mutual filed a motion

5

for summary judgment. Doc. #108. Approximately two weeks later, Mass Mutual filed a motion to dismiss. Doc. #114.

Neither Williamson nor Ellis responded to either motion. On April 5, 2018, this Court entered an order directing Williamson and Ellis to respond to both the motion to dismiss and the motion for summary judgment on or before April 19, 2018. Doc. #115 at 1–2. The order warned that "[f]ailure to respond to the motions within the time allowed will likely result in case dispositive sanctions" and that "[n]o extensions of the response deadline will be granted in the absence of extraordinary circumstances." *Id*. at 2.

Neither Williamson nor Ellis responded by the April 19, 2018, deadline. However, on May 1, 2018, Williamson, without seeking leave to respond out of time, filed a response in opposition to the motion for summary judgment, Doc. #116, and to the motion to dismiss, Doc. #117. The responses, which are about two pages each, contain no justification for the late filing. Additionally, the documents wholly fail to address the specific arguments raised by Mass Mutual and, amazingly, do not contain a single citation to authority.

On May 2, 2018, Mass Mutual filed a motion to strike the untimely responses. Doc. #118. Neither Williamson nor Ellis responded to the motion to strike.

## II
## Motion to Strike

In its motion to strike, Mass Mutual argues that Williamson's responses should be stricken because they are untimely and Williamson has offered no justification for their untimeliness. *Id*. at 3–4. A court, in the exercise of its inherent power to control its docket, may strike an untimely document. *Rashid v. Delta State Univ.*, 306 F.R.D. 530, 534 (N.D. Miss. 2015). There is no dispute that Williamson's responses were untimely. Accordingly, given the history of Williamson's repeated disregard for the Court's orders and procedural rules described above, the

6

motion to strike such documents is granted.

## III
## Motion to Dismiss

Mass Mutual contends that the claims of Hill's estate should be dismissed under Federal Rule of Civil Procedure 41 or this Court's inherent authority based on Williamson's conduct throughout this litigation.

Federal Rule 41(b) provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." To dismiss a claim with prejudice under Rule 41(b), there must be at least (1) "a clear record of delay or contumacious conduct by the plaintiff," and (2) a finding "that lesser sanctions would not prompt diligent prosecution" or a record showing "that the district court employed lesser sanctions that proved to be futile." *Tello v. Comm'r of Internal Revenue*, 410 F.3d 743, 744 (5th Cir. 2005). Additionally, the Fifth Circuit has observed that it "generally will affirm a dismissal only if [it] find[s] at least one of three aggravating factors: (1) delay caused by the plaintiff himself; (2) actual prejudice to the defendant; or (3) delay as a result of … intentional conduct." *Id*.

In seeking dismissal, Mass Mutual points to Williamson's conduct throughout this litigation, and argues that it has been prejudiced by the delays caused by Williamson and by the attorney's fees it has incurred in attempting to coerce Williamson's compliance. Doc. #114 at 8–9.

Williamson, both as an attorney and as a litigant, has engaged in contumacious conduct by flagrantly disregarding numerous orders of the Court. *See Xyngular v. Schenkel*, 890 F.3d 868, 873 (10th Cir. 2018) ("[C]ircuits have affirmed terminating sanctions where bad faith prelitigation conduct extended into court proceedings.") (collecting cases). Also, based on Williamson's continued violations of Court orders, as well as her refusal to pay court-ordered sanctions, the

7

Court finds that lesser sanctions would be futile.[3]  Further, the Court finds that Mass Mutual has been prejudiced in this matter by incurring substantial attorney's fees related to Williamson's conduct, which Williamson has refused to pay as ordered by the Court.  Accordingly, dismissal[4] of Hill's estate's claims for failure to prosecute is warranted.[5]

## IV
## Conclusion

Mass Mutual's motion to strike [118] and motion to dismiss [114] are both **GRANTED**.  Accordingly, Williamson's responses [116][117] are **STRICKEN**; and the claims asserted on behalf of Hill's estate are **DISMISSED with prejudice**.  In light of this dismissal, Mass Mutual is **ORDERED** to show cause, within fourteen (14) days of this order, why its motion for summary judgment should not be denied as moot, and why its claim for declaratory judgment, which was premised on the controversy related to Hill's claims for benefits, should not be dismissed for lack of jurisdiction.

**SO ORDERED**, this 10th day of July, 2018.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[3] In reaching this conclusion, the Court considered whether dismissal of just Williamson as a co-executor would ensure compliance with regard to the claims of the Estate.  However, insofar as Ellis has himself violated orders which warned of dismissal as a sanction, and has declined to file a single document since being substituted, the Court concludes that allowing him to proceed as the sole executor would not prompt diligent prosecution of this action.  *See generally Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 415 (4th Cir. 1993) ("If the court were to determine that the plaintiff's failure to respond [to a motion for summary judgment] constituted a failure to prosecute, then it could dismiss the action."); *Lediju v. N.Y.C. Dep't of Sanitation*, 173 F.R.D. 105, 111 (S.D.N.Y. 1997) (finding failure to prosecute where plaintiff conducted no discovery and failed to respond to motion for summary judgment).

[4] Even had the Court considered Williamson's now-stricken response to the motion to dismiss, it would not save this action from dismissal.  In the response, Williamson argued in conclusory fashion that Hill's will has been contested and that "[d]ismissal is a harsh and undesired penalty for all of the beneficiaries under the pending Estate and this Court can remedy any delay on this case by other means." Doc. #117 at 3.  The existence of any innocent beneficiaries, however, does not justify denial of Mass Mutual's motion.  *See Comstock v. UPS Ground Freight, Inc.*, 775 F.3d 990, 993 (8th Cir. 2014) ('[Administrator] also argues that with her suit dismissed, creditors and beneficiaries of [the] estate will lose recovery through no fault of their own. But [the administrator] cites no cases holding that a court must consider a sanction's secondary effects on non-parties, and we are unaware of any such rule.").

[5] Having reached this conclusion, the Court declines to consider whether dismissal would also be appropriate under this Court's inherent authority to sanction.